Your Honor, may it please the Court, counsel. My name is Tom Cogley. I represent the appellant in this matter, Mr. Jerome Moses Goodhouse, Jr. Jerome was convicted at a jury trial in August of 2002 of two counts of sexual assault and one count of witness tampering. We are asking this Court to reverse the District Court's decision denying our motion for a judgment of acquittal. Alternatively, we're asking for a new trial on either the issues of severance of the two sexual assault counts or the fourth introduction of the 413 evidence. And then finally, as a very last, or at the very least, we're requesting that the case be remanded for resentencing. The insufficiency of the evidence in the motion for severance, I think, in some ways are tied together because the case, in our view, rested on the testimony of the two young girls, C.M. and A.A.H. Each of them claimed to have been sexually assaulted by Jerome. The two cases were tried together. I understand the credibility determinations are generally for the jury, but in this case, there were several things that were problematic about the girls' testimony. I'll start with C.M. She first claimed that this assault happened when she was 11 years old. By the time trial came around, she was stating that she was 13 when it happened, and that's important, I think, because of the elements of the offense. She also testified at trial that Jerome had put his fingers inside of her or otherwise part on cross-examination. She was candid enough to admit that she'd been asked that specific question during her forensic interview and had denied that it had taken place. And so that's a really significant discrepancy from her original statement to her trial testimony. The other victim in this case, alleged victim, was A.A.H. Her trial testimony changed as well. In fact, when these allegations first arose in 2019, she denied anything had happened at all. Two years later, she did a forensic interview, and she said that some sexual act occurred, but she did not talk about oral sex. Fast forward to trial, and she's testifying that my client had forced her to perform oral sex on her. And in fact, when I cross-examined her, she said that she had disclosed as much during her forensic interview, or which just was patently not correct, whether she was misremembering or lying. The investigating agent admitted that during her forensic interview, she had claimed no such thing. And, you know, we have a long history of cases where exactly this issue is raised, and they almost uniformly go against the defendant because we say, you know, these are credibility determinations, and there's usually expert testimony that says, you know, there's emerging reporting that takes place with child witnesses when you have the kind of trauma that these sorts of acts can have. And that's all before the jury, and usually what we do is we just say, those are credibility determinations. They were reasonably presented to the jury, forcefully argued. The jury reached its conclusion. We aren't going to interfere with it. Now, why shouldn't we follow those lines of cases here today? Your Honor, because in this particular case, particularly with respect to CM, the elements of the offense require her to be between the ages of 12 and 16, and if she's not 12, then there's no offense under that count one. I also think that in this particular case, the expert's testimony, in fact, didn't explain the emerging disclosures. And, in fact, a lot of the statements or testimony by Ms. Strand sort of supported my theory, which was that these two girls had gotten together with the same person. It was one of their mother, I believe, and this story arose out of one conversation at a kitchen table. More than that, I think it also goes to the reason that we filed our motion to sever those two counts, because when you have two alleged victims — Let me just stop and put Judge Harrison's question in the converse. Do you have a case where a conviction was reversed because of inconsistencies in uncorroborated child victim testimony? I do not, Your Honor. You're familiar with U.S. v. Rouse, probably, from South Dakota. Vaguely, Your Honor, yes. One of my three Rouse opinions. This is not dissimilar, although that was far more complex. Yes, Your Honor. With respect to the severance issue, the biggest issue that I had with why these two counts were tried together is, again, we have two young girls who's standing alone. I think the jury probably has to take a harder look at the testimony. Standing alone, the things that CM says on a trial of her own, the jury is much more likely to not just pass over it. But when you couple these two young girls' testimony together and you get 12 people in a room, it's hard enough to get a jury to believe that one young child is making this stuff up or flat out lying. The government says, and do you agree, that if there had been separate trials, that the evidence of the separate offenses would have been probative and admissible at both? I don't agree with that, Your Honor. And I think the government rests on the idea that they're of the same character. I don't believe that they are. I think the closest thing that they have together is the temporal portion of it as well as the location of it. But the acts themselves, the ages of the two girls, I don't believe that they would have been admissible at separate trials. If the motion had been granted, I don't believe that the evidence would have been admitted at both trials. The other issue that was raised below was the issue of Jerome's prior sexual assault conviction under 413. It's our position. So you don't think that the government could have introduced CM's testimony at a separate trial for AH and vice versa? That's correct, Your Honor. And even if it had, it wouldn't have carried the same weight. But, no, I believe that we could have successfully kept that out because I don't believe that they, for this, frankly, for a number of the same reasons that you, Your Honors, were questioning the prior counsel about with respect to cumulativeness and prejudice and those types of issues. I do believe that those, if tried separately, those acts would have been kept out of each individual trial. On what basis under Rule 413 would they be kept out? Well, my argument as to 413 was that it still requires the 403 analysis. And so we'd end up, it would be unduly prejudicial? Yes, Your Honor, but I do want to make sure. Are you talking, are we still on? We're still on what Judge Lok was talking about. We're not talking about the prior conviction. Right. I still believe it would be subject to the 403 unfairly prejudicial. Your Honors, I see that my light has come up. And unless there are other questions, I'd reserve the balance of my time for rebuttal. Thank you. Thank you. May it please the Court, counsel. Once again, my name is Cameron Cook, and I represent the government in this appeal. Double duty today. Yes. I'm going to start where the defense counsel left off, talking about severance. I would start by saying these are highly similar offenses. First of all, they charge the same statutes, aggravated sexual abuse of the child. The victims are about the same age. CM was 12 years old. She testified to that on direct. She also testified to receiving a message from the defendant the day after this happens on March 11th of 2017. That anchors her testimony to a specific time, so that's how we know she was 12. And then AAH, the other victim, she gives a range for when the abuse happened, but it was around 10, 11 years old. It's a range for her, possibly nine, depending on when it happened. She says it happened in 2017 or 2018. So with her birth date, there's a range there. But then again, it's around the same time frame for both offenses, around 2017, within a couple years. It also involves the same location. Was it the same location? Yes, Your Honor. The basement of the defendant's residence. There's also overlapping evidence, specifically the testimony of LM. She's the mother of one of the victims and the grandmother of the other victim and guardian to both victims, and she testified that she would bring both victims over to the residence where the defendant lived and where the crimes happened. She knew the defendant's mother, and then she basically left the kids there when she went to work. That's how the defendant gained access to the children. So that evidence is highly overlapping. I point the court to the Tyndall case, T-Y-N-D-A-L-L. It's the 8th Circuit from 2001. There the court held that attempted sexual assaults of a 13-year-old girl and a 60-year-old woman were similar. I think the facts here are much stronger in terms of similarity. And as the district court noted, when it ruled on the severance motion, this evidence would have been probative and admissible in the separate trials. The Little Dog case, 8th Circuit, 2005, holds that. So that's the government's position, that these charges would have come in as evidence under 413 in the separate cases, even if they were severed. So the defendant cannot show that he was prejudiced by this joinder, and therefore severance was not entitled to severance of the charges. Your Honor, regarding the sufficiency of the evidence in the Decoto case, that's the 8th Circuit, 2011. This court held that the victim's testimony may be sufficient by itself to sustain the convictions. The two victims here both testified about two specific sex acts that were perpetrated against them. They used correct anatomy to describe what the defendant did. And it's ultimately up for the jury to decide the credibility of these victims. And they did that in this case and found the defendant guilty. I note there was corroboration for C.M., that message he sent. Again, I want to highlight that. She testified the day after she was assaulted by the defendant. He messaged her and asked her if she wanted to go cruising with him, but that she couldn't tell anybody where she was going. And then just to highlight the context of this, the defendant was 25 years old when he sent that message, and C.M. was 12 years old. So you have an adult man in his 20s telling a young child, come take a drive with me, but don't tell anyone where we're going. That, to the government, is strong corroboration of nefarious intent there, intent to abuse. It's also similar to the 413 evidence that came in from prior conviction. In that conviction, the factual basis statement and the judgment of conviction were entered. It was for abusive sexual contact of the defendant. And the factual basis in that case read that in 2016, the defendant took a different person out for a drive, and he went to a spot in McLaughlin, South Dakota, and when she was incapable of appraising what was happening, he dropped her over the closed genitals and breasts. So that's a little, that is similar to what might have happened with that invitation  Last point I want to highlight, Your Honor. The alleged inconsistencies by C.M. and A.H., they don't rise to the level of physical impossibility that this Court typically requires to undo a conviction. You know, some of the statements about when the offense occurred, such as C.M. saying she was 13 when the offense happened instead of 12, that was on cross-examination to a leading question. These are young women testifying, children. I think the Court needs to take that into account when deciding, you know, on cross-examination. They might say something that's not totally accurate, but the jury is very capable of deciding what's true or not and deciding the credibility of the witnesses in this matter. And once the Court has any other questions that I'd be happy to answer, I would ask that the Court affirm this case and affirm the convictions. Thank you. Thank you. For rebuttal, Mr. Cogley. Thank you, Your Honor. May it please the Court. I do want to use the balance of my time to address one thing about sentencing. I believe, although the guideline range was life, I do believe that the sentencing court ought to have varied downward. And the reason why is at least somewhat articulated in my brief. But the timeline of each of these convictions or each of these incidences I think is important. The 413 conviction was from 2018. It was conduct that occurred in 2016. These two allegations came up in 2017. In the interim, between the time of that 2018 conviction and these charges coming, my client had been to prison. He'd been to sex offender treatment. And he had been released from prison. He was on federal supervised release. And he was doing fairly well until these charges were brought. And the reason I bring that up is because in its decision, the district court made a comment about Jerome not learning from the 2018 conviction, which just given the timeline, I think is an unfair statement and an incorrect statement. And I think that the guideline range of life in this case was too great, given the particular facts of the case. And if nothing else, the Court should have varied downward. And if nothing else, this Court should at least remand for resentencing for that consideration. So unless you have any other questions, Your Honors, I appreciate your time. Thank you. Thank you.